RECEIVED
FEB 2 0 2018
CLERK, U.S DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

FILED
FEB 2 0 2018
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| FARRAH ABRAHAM, | : | Case No. |
| Plaintiff, | : | Judge **A18CV0150RP** |
| -vs- | : | |
| NEW REMOTE PRODUCTIONS, INC. | : | **PLAINTIFF'S COMPLAINT FOR DAMAGES** |
| and | : | |
| VIACOM INC. | : | |
| and | : | |
| ELEVENTH STREET PRODUCTIONS, INC. | : | |
| and | : | |
| ANXIOUS ELEVEN, LLC | : | |
| and | : | |
| MORGAN J. FREEMAN | : | |
| Defendants. | | |

## INTRODUCTION

1. This is an action by Farrah Abraham ("Ms. Abraham") to hold Defendants responsible for (1) harassing her because she did not conform to gender stereotypes; (2) wrongfully terminating her employment because she did not conform to gender stereotypes; and (3) terminating her employment in retaliation for complaining about the gender-stereotyping harassment she suffered. This civil action also seeks to hold New Remote Productions, Inc., Viacom Inc., Eleventh Street Productions, Inc., and Anxious Eleven, LLC responsible for breach of

contract, conversion, unjust enrichment, negligence, negligent hiring, retention, and/or supervision, tortious interference with business relations, defamation, and intentional infliction of emotional distress, as well as Morgan J. Freeman responsible for civil assault, tortious interference with business relations, defamation, and intentional infliction of emotional distress.

## THE PARTIES

2. Plaintiff Farrah Abraham is an individual and a resident of the state of Texas.

3. Upon information and belief, Defendant New Remote Productions, Inc. operates as a subsidiary of Viacom, Inc., a domestic business corporation organized under the laws of the state of Delaware, with its principle place of business in New York.

4. Upon information and belief, Defendant Viacom, Inc. is a domestic business corporation organized under the laws of the state of Delaware, with its principle place of business in New York.

5. Defendant Eleventh Street Productions, Inc. is a domestic business corporation organized under the laws of the state of New York, with its principle place of business in New York.

6. Defendant Anxious Eleven, LLC is a limited liability company organized under the laws of the state of New York, with its principle place of business in New York.

7. Defendant Morgan J. Freeman is an individual and a resident of the state of New York.

## JURISDICTION

8. This Court has personal jurisdiction over all Defendants because: (1) the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042, is satisfied; and (2) Defendants purposefully avail themselves of the privilege of conducting business in the state of

Texas, the conduct arises out of this purposeful availment in the state of Texas, and it is reasonable to hold them accountable in the state of Texas.

9. This Court also has original/subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. § 1332(c)(1) because there is diversity of citizenship and the amount in controversy exceeds $75,000.00.

## VENUE

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the events, acts, and omissions giving rise to Plaintiff's claims occurred in this district.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

11. In August of 2009, Ms. Abraham entered into an agreement with New Remote Productions, Inc. ("NRPI"), on behalf of Viacom, Inc. ("Viacom"), whereby she agreed to be a participant on a documentary television series titled "16 and Pregnant", which later changed to "Teen Mom."

12. For almost a decade, Ms. Abraham has been a main cast member on "Teen Mom" and its subsequent spin-off series, "Teen Mom OG."

13. On or around October 30, 2017, Ms. Abraham was confronted by Morgan J. Freeman ("Freeman"), one of the executive producers for Teen Mom OG and the CEO of Eleventh Street Productions, Inc., at her Texas residence.

14. Freeman, alongside his production crew, harassed, humiliated, discriminated against, disrespected, ridiculed, degraded, and sex shamed Ms. Abraham for her recent decision to pursue opportunities in the adult entertainment industry.

15. Also during this confrontation threats were made against Ms. Abraham by Freeman about ending her career with MTV, sabotaging future deals Ms. Abraham had in place with MTV, and defaming her.

16. Given Freeman's hostile tone, mannerisms, and body language, Ms. Abraham feared for her life.

17. Shortly after this confrontation, and as a direct result of Freeman following through on many of the threats he made, NRPI informed Ms. Abraham that her participation for the remainder of the current Teen Mom OG season was no longer needed.

18. In addition, NRPI informed Ms. Abraham that they were pulling the plug on a lucrative deal that the two had been in negotiations for months.

19. Notwithstanding NRPI's decision to cease filming Ms. Abraham, Ms. Abraham has continued to fulfill her contractual obligations in good faith.

## COUNT I

**HOSTILE WORK ENVIRONMENT SEX-BASED/GENDER DISCRIMINATION IN EMPLOYMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000**

20. Each of the paragraphs is incorporated by reference as if fully set forth herein.

21. Ms. Abraham is a female and a member of a protected class.

22. Ms. Abraham was harassed by Defendants in her workplace because Ms. Abraham did not meet Defendants' gender stereotypes on how women should act and appear.

23. Defendants' verbal and gestural harassment of Ms. Abraham was so severe and pervasive as to affect and/or alter a term, condition, and/or privilege of her employment. The harassment was abusive.

24. Defendants' harassment of Ms. Abraham based upon Defendants' gender stereotypes of how women should act and appear, unreasonably interfered with Ms. Abraham's work performance and psychological well-being.

25. Defendants failed to take corrective and/or appropriate action subsequent to being placed on notice of Freeman's severe and pervasive behavior. Rather, Defendants retaliated against Ms. Abraham for complaining and terminated her employment.

26. As a result of Defendants' actions, Ms. Abraham has been and continues to be damaged in an amount to be determined at trial, but consisting of contractual damages, economic damages, and non-economic compensatory damages such as those for emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

27. Pursuant to 42 U.S.C. §§ 1981a and 2000e-5, Ms. Abraham is entitled to non-economic compensatory damages in an amount consistent with the foregoing statutes.

28. Defendants acted with malice and reckless indifference to Ms. Abraham's federally-protected rights and, pursuant to 42 U.S.C. §§ 1981a, 2000e-5, Ms. Abraham is entitled to punitive damages in an amount consistent with the foregoing statutes.

29. Pursuant to 42 U.S.C. § 2000e-5(k), Ms. Abraham seeks her reasonable attorneys' fees incurred in pursuing the claims set forth in Count I.

## COUNT II

**WRONGFUL TERMINATION/RETALIATION IN EMPLOYMENT IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000 AND CHAPTER 21 OF THE TEXAS LABOR CODE**

30. Each of the paragraphs is incorporated by reference as if fully set forth herein.

31. Ms. Abraham is a member of a protected class.

32. Ms. Abraham opposed a practice made unlawful by Title VII of the Civil Rights Act of 1964 by complaining to the executives about her severe and pervasive harassment because Ms. Abraham did not meet Defendant Freeman's gender stereotypes on how women should act and appear.

33. Ms. Abraham was subsequently terminated from her employment.

34. Ms. Abraham's termination is causally related to protected activity of opposing Defendant Freeman's unlawful employment practice.

35. As a result of Defendants' actions, Ms. Abraham has been and continues to be damaged in an amount to be determined at trial, but consisting of contractual damages, economic damages, non-economic compensatory damages such as those for emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

36. Pursuant to 42 U.S.C. §§ 1981a and 2000e-5, Ms. Abraham is entitled to non-economic compensatory damages in an amount consistent with the foregoing statutes.

37. Defendants acted with malice and reckless indifference to Ms. Abraham's federally-protected rights and, pursuant to 42 U.S.C. §§ 1981a, 2000e-5, Ms. Abraham is entitled to punitive damages in an amount consistent with the foregoing statutes.

38. Pursuant to 42 U.S.C. § 2000e-5(k), Ms. Abraham seeks her reasonable attorneys' fees incurred in pursuing the claims set forth in Count II.

## COUNT III

### HOSTILE WORK ENVIRONMENT GENDER DISCRIMINATION IN EMPLOYMENT IN VIOLATION OF CHAPTER 21 OF THE TEXAS LABOR CODE

39. Each of the paragraphs is incorporated by reference as if fully set forth herein.

40. Ms. Abraham is a female and a member of a protected class.

41. Ms. Abraham was harassed by Defendants on the basis of her gender in the workplace because Ms. Abraham did not meet Defendants' gender stereotypes on how women should act and appear.

42. Defendant Freeman's verbal and gestural harassment of Ms. Abraham was so severe and pervasive as to affect and/or alter a term, condition, and/or privilege of her employment. The harassment was abusive.

43. Defendant Freeman's harassment of Ms. Abraham based upon his gender stereotypes of how women should act and appear, unreasonably interfered with Ms. Abraham's work performance and psychological well-being.

44. Defendant Viacom knew of should have known about the harassment as early as October 30, 2017 when Defendant Freeman made inappropriate comments regarding Ms. Abraham's appearance, past work history, and work ethic when Ms. Abraham complained about this conduct.

45. Defendants failed to take corrective and/or appropriate action subsequent to being placed on notice regarding Defendant Freeman's severe and pervasive behavior.

46. As a result of Defendants' unlawful discrimination, Ms. Abraham has been, and continues to be, damaged.

47. Defendants' actions, either directly or through their employees or agents, demonstrate malice or aggravated or egregious fraud and Ms. Abraham is therefore entitled to punitive damages and her reasonable attorneys' fees incurred in pursuing this action.

## COUNT IV

### WRONGFUL TERMINATION/RETALIATION IN EMPLOYMENT IN VIOLATION OF CHAPTER 21 OF THE TEXAS LABOR CODE

48. Each of the paragraphs is incorporated by reference as if fully set forth herein.

49. Ms. Abraham is a member of a protected class.

50. Ms. Abraham opposed a practice made unlawful by Chapter 21 of the Texas Law Code by complaining to the executives about her severe and pervasive harassment because Ms. Abraham did not meet Defendant Freeman's gender stereotypes on how women should act and appear.

51. Ms. Abraham was subsequently terminated from her employment.

52. Ms. Abraham's termination is causally related to protected activity of opposing Defendants' unlawful employment practice.

53. As a result of Defendants' unlawful discrimination, Ms. Abraham has been, and continues to be, damaged.

54. Defendants' actions, either directly or through their employees or agents, demonstrate malice or aggravated or egregious fraud and Ms. Abraham is therefore entitled to punitive damages and her reasonable attorneys' fees incurred in pursuing this action.

## COUNT V

### NEGLIGENT HIRING, RETENTION, AND/OR SUPERVISION

55. Each of the preceding paragraphs is hereby incorporated by reference as if fully set forth herein.

56. Defendants Viacom and NRPI owed Ms. Abraham a duty to exercise ordinary care in hiring, retaining, and supervising employees and/or agents working with Viacom and NRPI.

57. Defendants breached that duty of care when it directly, and/or through its agents and/or employees, failed to exercise ordinary care in hiring, retaining, and/or supervising its

agents and/or employees who discriminated against, and engaged in other tortious conduct toward, Ms. Abraham.

58. Defendants' breach(es) directly and/or through its agents and/or employees proximately caused, and continues to proximately cause, damages to Ms. Abraham in an amount to be determined at trial, but consisting of contractual damages, economic damages, and non-economic compensatory damages such as those for emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

59. Defendants' actions, either directly or through their employees or agents, demonstrate malice or aggravated or egregious fraud and Ms. Abraham is therefore entitled to punitive damages and her reasonable attorneys' fees incurred in pursuing this action.

## COUNT VI

### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

60. Each of the preceding paragraphs is hereby incorporated by reference as if fully set forth herein.

61. There is a clear public policy of, among other things, preventing workplace harassment, based upon gender roles and/or gender stereotypes.

62. This public policy is manifested in the state or federal constitution, state or federal statutes, state or federal regulations, and/or state or federal common law.

63. Ms. Abraham was terminated under circumstances that jeopardize the public policy(ies).

64. Ms. Abraham's termination was motivated by conduct related to the public policy(ies).

65. Defendants lacked an overriding legitimate business justification for the dismissal.

66. As a result of Defendants' actions, Ms. Abraham has been, and continues to be, damaged.

67. Defendants' actions, either directly or through its employees or agents, demonstrate malice or aggravated or egregious fraud and Ms. Abraham is therefore entitled to punitive damages and her reasonable attorneys' fees incurred in pursuing this action.

## COUNT VII

### NEGLIGENCE

### (DIRECTLY AND/OR VICARIOUSLY)

68. Each of the preceding paragraphs is hereby incorporated by reference as if fully set forth herein.

69. Defendants owed Ms. Abraham a duty to act with ordinary care towards Ms. Abraham and with respect to her employment by Defendants.

70. Defendants either directly, or vicariously through their agents and/or employees, breached that duty of care by their actions described in this Complaint.

71. Defendants' breach proximately caused, and continues to cause, damages to Ms. Abraham in an amount to be determined at trial, but consisting of contractual damages, economic damages, and non-economic compensatory damages such as those for emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

72. Defendants' actions, either directly or through their employees or agents, demonstrate malice or aggravated or egregious fraud and Ms. Abraham is therefore entitled to punitive damages and her reasonable attorneys' fees incurred in pursuing this action.

## COUNT VIII

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (AGAINST ALL DEFENDANTS DIRECTLY AND/OR VICARIOUSLY)

73. Each of the preceding paragraphs is hereby incorporated by reference as if fully set forth herein.

74. Defendants' unlawful and/or tortious actions described in this Complaint were taken intentionally or recklessly.

75. Defendants' unlawful and/or tortious actions described in this Complaint are outrageous and intolerable such that they offend the generally accepted standards of decency and morality.

76. As a proximate result of Defendants' unlawful and/or tortious actions described in this Complaint, Ms. Abraham has suffered, and continues to suffer, damages in an amount to be determined at trial, but consisting of emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

77. The emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses Ms. Abraham has suffered, and continues to suffer, is severe.

78. Defendants' actions, either directly or through their employees or agents, demonstrate malice or aggravated or egregious fraud and Ms. Abraham is therefore entitled to punitive damages and her reasonable attorneys' fees incurred in pursuing this action.

## COUNT IX

### DEFAMATION

79. Each of the preceding paragraphs is hereby incorporated by reference as if fully set forth herein.

80. Defendant Freeman made false and defamatory statements regarding Ms. Abraham.

81. Defendant published these statements to others. Specifically, Defendant made false and defamatory statements in the presence of other employees of Eleventh Street Productions, Inc., and directly to the media.

82. Defendant has caused and continues to cause, damages to Ms. Abraham in an amount to be determined at trial, but consisting of contractual damages, economic damages, and non-economic compensatory damages such as those for emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

83. Because Defendant Freeman persistently told others that Ms. Abraham was unprofessional and insubordinate, despite knowing that these statements were false, Defendant acted with malice or aggravated or egregious fraud and Ms. Abraham is therefore entitled to punitive damages and her reasonable attorneys' fees incurred in pursuing this action.

## COUNT X

### TORTIOUS INTERFERENCE WITH ACTUAL AND PROSPECTIVE BUSINESS RELATIONS
### (AGAINST DEFENDANT FREEMAN)

84. Plaintiff repeats and incorporates by reference all paragraphs set forth above as if fully set forth herein.

85. A valid business relationship, valid business expectancy, and/or employment relationship existed between Ms. Abraham, Viacom, and NRPI.

86. Defendant Freeman had knowledge of the valid business relationship, valid business expectancy, and/or employment relationship that existed between Ms. Abraham, Viacom and NRPI.

87. Defendant acted to intentionally inhibit the valid business relationship, valid business expectancy, and/or employment relationship between Ms. Abraham, future employers, and other companies through spreading false and defamatory statements about Ms. Abraham.

88. Defendant acted with an improper motive and lack of justification.

89. Defendant acted with actual malice.

90. As a result of Defendant's actions, Ms. Abraham has been and continues to be damaged in an amount to be determined at trial.

91. Defendant's actions, either directly or through its employees or agents, demonstrate malice or aggravated or egregious fraud and Ms. Abraham is therefore entitled to punitive damages.

92. Defendant's actions, either directly or through its employees or agents, demonstrate malice or aggravated or egregious fraud and Ms. Abraham is therefore entitled to her reasonable attorney's fees incurred in pursuing this action.

## COUNT XI

### TORTIOUS INTERFERENCE WITH ACTUAL AND PROSPECTIVE BUSINESS RELATIONS (AGAINST VIACOM AND NRPI)

93. Plaintiff repeats and incorporates by reference all paragraphs set forth above as if fully set forth herein.

94. A valid business relationship, valid business expectancy, and/or employment relationship existed between Ms. Abraham and future network television shows.

95. Defendants Viacom and NRPI had knowledge of this valid business relationship, valid business expectancy, and/or employment relationship.

96. Defendants acted to intentionally inhibit the valid business relationship, valid business expectancy, and/or employment relationship between Ms. Abraham, future employers, and other companies through spreading false and defamatory statements about Ms. Abraham and by enforcing exclusivity provisions under her contract in bad faith.

97. Defendants acted with an improper motive and lack of justification.

98. Defendants acted with actual malice.

99. As a result of Defendants' actions, Ms. Abraham has been and continues to be damaged in an amount to be determined at trial.

100. Defendants' actions, either directly or through its employees or agents, demonstrate malice or aggravated or egregious fraud and Ms. Abraham is therefore entitled to punitive damages.

101. Defendants' actions, either directly or through its employees or agents, demonstrate malice or aggravated or egregious fraud and Ms. Abraham is therefore entitled to her reasonable attorney's fees incurred in pursuing this action.

## COUNT XII

### ASSAULT

102. Each of the preceding paragraphs is hereby incorporated by reference as if fully set forth herein.

103. On October 30, 2017, Defendant Freeman intended to cause and did cause Ms. Abraham to suffer immediate apprehension of an imminent or harmful contact.

104. The above-described conduct occurred within the scope of Ms. Abraham's employment with Viacom and NRPI.

105. As a direct and proximate result of Freeman's conduct, Ms. Abraham suffered severe emotional distress.

106. Defendant Freeman's actions were done willfully, wantonly, maliciously, and without privilege or provocation, and Ms. Abraham is entitled to punitive damages in an amount to be determined at trial.

## COUNT XIII

### BREACH OF CONTRACT

107. All of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

108. A written contract ("Agreement") was entered into between Ms. Abraham and NRPI.

109. Defendant had an obligation to make certain rights payments to Ms. Abraham pursuant to paragraph 3 of the Agreement.

110. Ms. Abraham performed all of the conditions, covenants, and promises required by her to be performed in accordance with the terms and conditions of the Agreement.

111. Defendant breached its contract with Ms. Abraham by failing to make payment consistent with paragraph 3 of the contract.

112. As a direct and proximate cause of Defendant's actions, Ms. Abraham has suffered damages and continues to suffer damages.

113. As a result of the breach by Defendant, Ms. Abraham has been damaged in an amount exceeding $1,000,000.00, plus prejudgment and postjudgment interest, costs, and attorneys' fees.

## COUNT XIV

## CONVERSION

## (AGAINST DEFENDANT NRPI)

114. All of the preceding paragraphs are hereby incorporated by reference.

115. Defendant intentionally and wrongfully obtained and kept without permission, Ms. Abraham's money.

116. Defendant knew, or should have known, that it had no right to possess or keep Ms. Abraham's money. Nevertheless, in conscious disregard of Ms. Abraham's legal rights and property interests (and despite Ms. Abraham's repeated requests for payment), Defendant chose to obtain, keep, and use Ms. Abraham's money for its own financial benefit.

117. At all relevant times Defendant acted with malice and conscious disregard of Ms. Abraham's legal rights and property interests. By wrongfully holding on to Ms. Abraham's property, Defendant converted Ms. Abraham's property.

118. Defendant's refusal to pay the money constitutes an intentional interference with Ms. Abraham's ownership rights in that property, which deprived Ms. Abraham of her right to possess that property.

119. Defendant's actions have damaged, and continue to damage, Ms. Abraham.

120. Accordingly, Ms. Abraham is entitled to an award of compensatory damages in an amount to be determined at the trial.

121. In light of the malicious, intentional and/or willful nature of Defendant's actions, Ms. Abraham is also entitled punitive damages and attorneys' fees in an amount to be determined at trial.

## COUNT XV

## UNJUST ENRICHMENT

## (AGAINST DEFENDANT NRPI)

122. All of the preceding paragraphs are hereby incorporated by reference.

123. Defendant has been unjustly enriched at the expense of Ms. Abraham' by failing to pay Ms. Abraham the money she is owed, as set forth above.

124. As a direct and proximate result of Defendant's unjust enrichment, Ms. Abraham has suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Abraham requests judgment in her favor on all Counts alleged in this Complaint and requests the following relief:

(a) Economic compensatory damages, non-economic compensatory damages, and punitive damages in an amount to be determined at trial but exceeding $5,000,000;

(b) Reasonable attorneys' fees incurred in pursuing this lawsuit;

(c) All other costs and expenses of the lawsuit;

(d) Pre- and post-judgment interest; and

(e) Any other relief this Court deems just and proper under the circumstances.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Ms. Abraham hereby demands a trial by the maximum amount of jurors permitted by law on all claims asserted in the Complaint.

Respectfully submitted,

/s/ Avonte Campinha-Bacote
Avonte D. Campinha-Bacote (Pro Hac Vice)
OH State Bar No. 0085845
Campinha Bacote LLC
1176 Crespi Drive
Pacifica, CA 94044
(513) 313-3806
(415) 276-2988 (FAX)
Avonte@CamBacLaw.com

*Counsel for Plaintiff*